MARIA C. ROSADO, Individually and as Executrix of LOUIS ROSADO, Deceased, Appellant, v MERCEDES-BENZ OF NORTH AMERICA, INC., Respondent, et al., Defendant.

Second Department, October 1, 1984

APPEARANCES OF COUNSEL

*Raskin & Rappoport, P.C.* (*Lester Raskin* and *Perry Gary Fish* of counsel), for appellant.

*Ford Marrin Esposito & Witmeyer* (*William P. Ford* and *Cushing O. Condon* of counsel), for respondent.

OPINION OF THE COURT

BOYERS, J.

In this wrongful death action, plaintiff Maria Rosado alleges that the cruise control mechanism in her husband's new 300D Mercedes-Benz automobile malfunctioned, thereby causing him to lose control of the vehicle and resulting in a crash which occasioned his demise. Defendant Mercedes-Benz of North America, Inc. (MBNA), is the American distributor of Mercedes-Benz automobiles, which are manufactured in the Federal Republic of Germany.

By order dated July 1, 1981, Justice Gurahian at Special Term directed, *inter alia,* that defendant MBNA produce complete engineering schematics with respect to the cruise

control system used in the Mercedes-Benz 300D models for the years 1976 and 1977. (That order was modified by this court with respect to documents not at issue here [*Rosado v Mercedes-Benz of North Amer.*, 90 AD2d 515].) In compliance with Special Term's order, on December 30, 1982, defendant MBNA produced a brochure entitled "VDO Information". That document, presently the subject of this appeal, explains the working of the cruise control component fitted in plaintiff's husband's automobile, and was prepared in German by VDO Adolf Schindling AG (VDO Schindling), a German corporation which makes cruise control component parts for a number of automobiles, including Mercedes-Benz vehicles, and which is in no way affiliated with MBNA. In content, this piece of technical literature comprises eight printed pages and seven pages of schematics.

Prior to and at the February, 1983 examination before trial of MBNA's witness Axel Stehle, plaintiff's counsel sought production of an English translation of the brochure. MBNA, possessing no translated copy, refused to prepare a translation. Thereafter, plaintiff moved at Special Term for an order compelling MBNA to translate the document and directing further deposition of the witness Stehle, founding the relief sought upon the authority of CPLR 2101 (subd [b]). Special Term denied the motion, holding that CPLR 2101 "does not embrace documents produced pursuant to Rule 3120 within the requirement that they be in the English language", and, accordingly, it was plaintiff's obligation to obtain and bear the cost of translation. For the reasons delineated below, we affirm.

CPLR 2101 governs the form of papers served or filed in civil judicial proceedings (CPLR 2101; see CPLR 101). CPLR 2101 (subd [b]) requires that "[e]ach paper served or filed [in an action or proceeding] shall be in the English language". Further, where an affidavit or exhibit annexed to a paper served or filed is written in a foreign language, it must be accompanied by an English translation and the translator's affidavit of accuracy (CPLR 2101, subd [b]).

Plaintiff would persuade this court that CPLR 2101, which requires that papers served or filed in an action or proceeding either be printed in English or attached to a

certified English translation, is generally applicable to documents produced during the discovery process. We cannot agree.

It is true that in certain circumstances, the term "paper" may be considered ambiguous. For example, it may mean either "[a]ny" document, or more specifically, a document to be "filed or introduced in evidence in a suit" (Black's Law Dictionary [5th ed], p 1001). However, a comprehensive reading of CPLR 2101 leads only to the reasonable conclusion that the statute was designed to apply to the latter and more narrow class of documents, namely, those filed or introduced into evidence in an action.

For example, the requirement that each paper be white, of legal or letter size and written in black ink (CPLR 2101, subd [a]) necessarily cannot apply to nonlegal documents produced during pretrial discovery, which may be printed in widely differing sizes, ink hues and paper colors. Similarly, the requirement that each paper begin with a caption (CPLR 2101, subd [c]) cannot be read as pertaining to all "papers" in the broader sense. Further, the cases cited by plaintiff in support of her position encompass documents within the narrower category of court papers as defined, *supra* (e.g., *Hurwitz v Hurwitz,* 214 App Div 823 [Hebrew contract quoted and incorporated into pleading]; *Friedman v Prescetti,* 199 App Div 385 [application for warrants of attachment which contained an exhibit written in French]; *Matter of Giannopoulos,* 89 Misc 2d 961 [power of attorney executed in Albania and filed with court clerk without proper English translator's affidavit]; *Alfonso v Alfonso,* 99 Misc 550 [service by publication; summons in Italian language ineffectual]). In sum, to hold the provisions of CPLR 2101 applicable to all documents susceptible to disclosure would wreak havoc on the pretrial discovery process and its participants. The plain language of the statute is bereft of any indication that the Legislature intended such an absurd result.

Finding no support for plaintiff's contention under CPLR 2101, we turn to CPLR 3120. Once again, we ascertain no authority for the proposition that MBNA should be compelled to produce a translation of the VDO Schindling brochure.

Through disclosure a party may be required to produce only those items "which are in the possession, custody or control of the party served" (CPLR 3120, subd [a], par 1, cl [i]). Such items must be preexisting and tangible to be subject to discovery and production (*Feretich v Parsons Hosp.*, 88 AD2d 903; see Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3120:1, p 516). Accordingly, a party cannot be compelled to create new documents or other tangible items in order to comply with particular discovery applications (*Slavenburg Corp. v North Shore Equities*, 76 AD2d 769; *Gilbert v Ligamarri*, 100 Misc 2d 1093; see, generally, 3A Weinstein-Korn-Miller, NY Civ Prac, par 3120.16; 8 Wright & Miller, Fed Prac & Pro, § 2210). Here, the only document in MBNA's possession was the German language VDO Schindling brochure. MBNA's representative has averred that the company does not possess an English translation, and, absent extraordinary circumstances, MBNA cannot be required to produce a translation not within its possession or control or to create one where none presently exists (see *Slavenburg Corp. v North Shore Equities, supra*). Whether VDO Schindling, which is not a party to this action, maintained an English version of its brochure is immaterial; only presently existing items within a *party's* possession, custody or control are susceptible to an application for production (cf. CPLR 3120, subd [b]).

Also significant in reviewing this particular plaintiff's application to compel translation is the general assumption enunciated by our brethren in the First Circuit, namely, that each party should shoulder the initial burden of financing his own suit, and based upon such a principle, it is the party seeking discovery of documents who should pay the cost of their translation (*Matter of Puerto Rico Elec. Power Auth.*, 687 F2d 501).* In our State, this policy is reflected in such statutory provisions as CPLR 3114, which requires that an examining party bear the cost of the translation of all questions and answers where the witness is non-English speaking, and also bear the cost of any

---

* The applicable rule 34 of the Federal Rules of Civil Procedure is similar to this State's CPLR 3120. It provides in pertinent part: "Upon motion of any party * * * the court * * * may (1) order any party to produce and permit the inspection and copying * * * of any designated documents * * * which are in his possession, custody or control".

experts necessary to assist the court in the settlement of questions in a foreign language (see 3A Weinstein-Korn-Miller, NY Civ Prac, par 3114.01; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3114:1, p 465).

In sum, we conclude that the term "papers served or filed" in CPLR 2101 cannot be read as encompassing the VDO Schindling brochure made available by MBNA for inspection pursuant to CPLR 3120. However, "the scope and supervision of disclosure are matters within the sound discretion of the court" (*Borden v Ellis Hosp.*, 67 AD2d 1038; see, also, *Wahrhaftig v Space Design Group,* 33 AD2d 953; *Matter of Head v State of New York,* 32 AD2d 999; see 7 Weinstein-Korn-Miller, NY Civ Prac, par 5501.22). Here Special Term acted well within its discretion and in keeping with the purposes and goals of CPLR article 31. The court also properly deferred plaintiff's application for an order directing that MBNA's expert reappear for deposition until after plaintiff had obtained and reviewed a translated text of the brochure.

This court would be remiss, however, if it did not observe that this case constitutes a classic example of waste. The document at issue comprises a mere eight printed pages and seven pages of schematics in the German language. As such, the securing of an appropriate translator would neither be difficult logistically nor unduly burdensome financially. Indeed, the expense of the underlying motion and the prosecution of this appeal, both in attorneys' billing time and in the use of judicial resources, by far surpasses the outlay necessary for translation.

MANGANO, J. P., O'CONNOR and EIBER, JJ., concur.

Order of the Supreme Court, Westchester County, entered May 27, 1983, affirmed, with costs.