*1064 OPINION OF THE COURT
Eileen Bransten, J.
Motion sequence Nos. 008 and 009 are consolidated for disposition. In motion sequence No. 008, MBIA Insurance Corporation moves, pursuant to CPLR 2214 (d), to compel production of documents and, in motion sequence No. 009, defendants Countrywide Home Loans, Inc., Countrywide Securities Corp. and Countrywide Financial Corp. (collectively, Countrywide) move, pursuant to CPLR 3103 (a), 3124 and 3126 for a protective order and, pursuant to CPLR 3120, to compel production of documents.
Background
The factual background of this matter is discussed extensively in this court’s decision dated July 8, 2009 (MBIA Ins. Co. v Countrywide Home Loans, Inc., 2009 NY Slip Op 31527[U] [Sup Ct, NY County, July 8, 2009, index No. 602825/08]), reference to which is made herein.
Countrywide Financial Corp. is engaged in mortgage lending and other real estate finance-related businesses, including mortgage banking, securities dealing and insurance underwriting (complaint 1! 9). Countrywide Home Loans, Inc., which originates and services residential home mortgage loans, and Countrywide Securities Corp., which is a registered broker-dealer and underwrites offerings of mortgage-backed securities, are both wholly owned subsidiaries of Countrywide Financial Corp. (id. IN 10-11).
MBIA is a monoline insurer and provides financial guarantee insurance and other forms of credit protection to securities issuers (id. H 8).
From 2002 through 2007, MBIA provided credit enhancement — in the form of a guarantee of repayment of principal and interest for the residential mortgage-backed securitization[1] (RMBS) notes in each securitization — for a total of 17 Countrywide securitizations of mortgage loans (id. IN 30, 34). This action concerns 15 of those 17 securitizations underwritten between 2004 and 2007, involving home equity lines of credit and closed-end second liens (id. 1N 27, 34). Because the mortgages backing the securitizations are the only collateral supporting *1065 the RMBS, their credit quality is of critical importance to an RMBS noteholder (id. If 28).
For each securitization, Countrywide Home or Countrywide Servicing, a single-purpose trust that held the mortgage loans (the trust), and MBIA also entered into an insurance agreement (collectively, the insurance agreements) which provided the terms for the issuance of an MBIA financial guaranty policy (a policy) that would be issued to the trust. The insurance agreements included the representations and warranties and the obligations of the parties and gave MBIA the right to rely on them, to enforce their terms and to exercise remedies for any breach.
The parties have been engaged in document exchange and disputes have arisen.
MBIA, in its motion to compel discovery, seeks (1) documents relating to two securitizations beyond those upon which it brought the amended complaint; (2) loan files for any loans that have ever been 30 days delinquent; (3) data contained in electronic systems used by Countrywide in the origination, underwriting and servicing of loans; (4) documents relating to lists of appraisers from whom Countrywide refuses to accept appraisals or will only accept with a second appraisal; (5) documents, including those related to due diligence and risk assessment, related to loans not originated by Countrywide; (6) documents relating to communications with any regulator, law enforcement agency or state attorney general in connection with the loans, securitizations and trusts; (7) documents relating to Bank of America’s (BofA) settlement with various state attorneys general; (8) documents relating to any transfer of assets or assumption of any debt securities between Countrywide and BofA; (9) documents sufficient to show all assets and liabilities as of the date of BofA’s acquisition of Countrywide; (10) documents relating to due diligence provided to BofA in connection with its acquisition of Countrywide; and (11) documents relating to the compensation of Angelo Mozilo (former CEO of Countrywide) and David Sambol (former COO of Countrywide).
Countrywide, in its motion for a protective order and to compel discovery, seeks (1) cost-shifting of discovery expenses; (2) case tracking with Syncora v Countrywide (Sup Ct, NY County, index No. 650042/09); (3) a protective order relating to MBIA’s motion to compel; and (4) an order compelling MBIA to respond to Countrywide’s discovery demands.
*1066 This court heard oral argument on the motions to compel on May 14, 2009. On May 21, 2009, both parties submitted proposed interim orders, at the request of this court, addressing issues decided on the record during the May 14, 2009 oral argument, as well as issues that required determination. The proposed orders were similar but for three central issues: the description of reports Countrywide agreed to produce, the relevance of the other seven securitizations not at issue in this action and cost-shifting. Neither proposed interim order was signed.
On July 8, 2009, this court decided Countrywide’s motion in part, dismissing the negligent misrepresentation cause of action against all defendants and dismissing the breach of contract, breach of the implied covenant of good faith and fair dealing and indemnification causes of action as against Countrywide Financial and Countrywide Securities.
On August 24, 2009, MBIA filed an amended complaint.
By letters dated September 28 and September 29, 2009, MBIA and Countrywide, respectively, submitted supplemental arguments addressing the pending motions to compel in light of the amended complaint.
Analysis
A party is entitled to full disclosure of all evidence “material and necessary in the prosecution or defense of an action” (CPLR 3101 [a]). CPLR 3101 is to be liberally construed to require disclosure where the matter sought will assist in trial preparation by sharpening the issues (Kavanagh v Ogden Allied Maintenance Corp., 92 NY2d 952, 954 [1998]). “The words ‘material and necessary’ are ... to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity” (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968]). Furthermore, the “test is one of usefulness and reason” (id.).
However, “competing interests must always be balanced; the need for discovery must be weighed against any special burden to be borne by the opposing party” (Kavanagh, 92 NY2d at 954, quoting O’Neill v Oakgrove Constr., 71 NY2d 521, 529 [1988], rearg denied 72 NY2d 910 [1988]). Furthermore, “[t]he burden of showing that the disclosure sought is improper is upon the party seeking [it]” (Roman Catholic Church of Good Shepherd v Tempco Sys., 202 AD2d 257, 258 [1st Dept 1994]).
*1067 MBIA’s Motion to Compel Additional Securitizations
MBIA seeks discovery related to two Countrywide securitizations[2] for which it provided financial guaranty insurance aside from the 15 securitizations directly referenced in the amended complaint. MBIA asserts that this discovery is relevant “to establishing a benchmark for comparison with the Ten Securitizations” (MBIA’s motion in support of its motion to compel at 12, 13). It explains that “a comparison ... is necessary to prove whether Countrywide dramatically changed its origination, underwriting, and securitizing practices as part of its concerted campaign to increase market share” and “whether Countrywide adhered to its existing and publicly stated policies of prudent and conservative underwriting” (id.).
Defendants argue that the two other securitizations are irrelevant because they are not at issue in this action. Defendants’ principal objection, however, concerns the cost and effort required to produce documents.
Here, regardless of whether certain underwriting practices changed, MBIA ultimately seeks relief based on allegations that Countrywide’s conduct was inconsistent with its claimed underwriting practices. Documents related to securitizations not at issue in this action are unnecessary in order for MBIA to verify whether defendants followed their own underwriting policies. Whether such practices were indeed followed for mortgage loans in one securitization will not be revealed by Countrywide’s policies and practices for mortgage loans in other securitizations; such “benchmarking” is merely tangential to the argument here. MBIA fails to assert a material need for discovery relating to the two additional securitizations.
Merely because discovery might be relevant does not consequently entitle MBIA to that discovery (see American Express Equip. Fin. Corp. v Mercado, 34 AD3d 880, 882 [3d Dept 2006] [“While it is theoretically possible that the employer’s alleged fraud, if it can be connected to plaintiff in some legally cogniz *1068 able fashion, might ultimately support a defense of fraudulent inducement, any discovery demands unrelated to the particular transaction at issue are clearly irrelevant” (citations omitted)]). Considering MBIA’s deficiency in substantiating its need for discovery in connection with securitizations not at issue in this action, the burdensome nature of the request and the lack of relevance to the securitizations at issue, MBIA’s request is denied (Crazytown Furniture v Brooklyn Union Gas Co., 150 AD2d 420, 421 [2d Dept 1989] [“It is incumbent on the party seeking disclosure to demonstrate that the method of discovery sought will result in the disclosure of relevant evidence or is reasonably calculated to lead to the discovery of information bearing on the claims”]; cf. Herbst v Bruhn, 106 AD2d 546, 549 [2d Dept 1984] [affidavit “containing bare unsubstantiated conclusory statements as to relevance is insufficient to establish a factual predicate for the disclosure of the medical records of a nonparty whose personal physical condition is not in issue”]).
Loan Origination and Servicing Files that are 30 Days Delinquent
MBIA’s requests for the production of documents Nos. 4 and 5 (hereinafter the individual requests will be referred to as “request No. XX”) seek the production of mortgage loan origination and servicing files for loans that were ever 30 days delinquent. MBIA contends that those loans are relevant because a loan over 30 days past due triggers a servicing obligation by Countrywide.
Countrywide responds that only loans that were 180 days delinquent, discharged or foreclosed are relevant in implicating insurance obligations. Those loans represent approximately 18,970 loans out of the total pool of loans backing the securitizations. Countrywide contends that it would be excessive if it were compelled to produce loan origination and servicing files that were 30 days delinquent, representing an additional 42,481 loans.
Action taken or not taken after a loan became 30 days past due is relevant to whether Countrywide performed its contractual servicing obligations. Moreover, what Countrywide knew or reasonably should have known about the quality of loans is relevant to MBIA’s fraud claim.
Undoubtedly, this action will demand an immense volume of discovery. Isolated discussion of the number of pages produced or that will be produced ignores the reality that the securitizations involved billions of dollars of credit enhancement in the form of financial guarantees (complaint 111). It is unimaginable *1069 that discovery would not be burdensome and expensive. Requests should be tapered or rejected, however, only when that imposition becomes inordinate, which Countrywide has not shown. In the absence of persuasive reasons from Countrywide against disclosure, this portion of MBIA’s application is granted.
Documents Relating to Appraisers with Whom Countrywide Refuses to Accept Appraisals
MBIA’s request No. 27 seeks the production of “[a]ll documents relating to Countrywide’s Field Review List or any other list kept by Countrywide of appraisers from whom Countrywide refuses to accept appraisals, or from whom it will accept appraisals only if accompanied by a second appraisal” (Sheth affirmation, exhibit 2, at 12).
MBIA contends that this production is needed to determine whether Countrywide engaged in the practice of using affiliated appraisers and creating incentives to those appraisers to provide inflated values for homes. MBIA contends that upon those facts, Countrywide would then be able to approve loans with inflated loan-to-value (LTV) ratios. MBIA argues that if this was true, the facts would contradict certain representations that appraisals were conducted by independent third-party appraisers, that the materials provided by Countrywide were accurate, that the LTV ratios provided in the loan tapes were accurate and that it was not aware of any reason why a borrower would not be able to repay a mortgage loan.
Countrywide counters that lists of appraisers were used simply because some appraisers were considered unacceptable and placed on “watch” lists. Countrywide further urges that the determination of whether appraisers were placed on “watch” lists was embodied in its policy and procedures, which will be or have already been produced.
Although MBIA’s theory may bear some relevance to its case, the request is too broad (Konrad v 136 E. 64th St. Corp., 209 AD2d 228, 228 [1st Dept 1994] [“ ‘a vast categorical demand for documents’ may constitute a ‘new kind of abuse of the discovery device’ ”], quoting Siegel, 1993 Supp Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, CPLR C3120:4, 1994 Pocket Part, at 48; see also CPLR 3120 [1] [i]). To respond to the request, Countrywide avers, would require it to produce all communications between its employees and thousands of appraisers regarding consideration, determination and reconsideration of an appraiser to be designated as “unacceptable” on the list.
*1070 MBIA bases its request on nothing more than its suspicions. The marginal benefit such a burdensome request may yield weighs against granting MBIA’s discovery motion at this time. Consequently, this portion of MBIA’s motion is denied (Orix Credit Alliance v Hable Co., 256 AD2d 114, 116 [1st Dept 1998] [defendants should not be allowed to use pretrial discovery as a fishing expedition when they cannot set forth a reliable factual basis for their suspicions]).
Documents Related to Loans Not Originated by Countrywide
MBIA’s request No. 15 seeks the production of documents relating to securitized loans not originated by Countrywide but instead acquired from external mortgage brokers and banks (see Sheth affirmation, exhibit 2, at 22). MBIA maintains that the request is relevant to whether Countrywide properly conducted due diligence in underwriting the loans and whether it misrepresented the quality of the loans in the securitizations.
Countrywide responds that the request is overly broad and unduly burdensome, citing that it purchased over 48,000 loans. It urges that because 4,500 of the 19,000 loans already being produced in connection with the 180 days delinquent category and the policies and procedures used in connection with the purchase of the loans are also being produced for request Nos. 4 and 5, MBIA will have sufficient information to determine Countrywide’s loan analysis.
MBIA alleges that many of Countrywide’s acquired loans “had significant but undisclosed credit risk” that would be a violation of Countrywide’s representation that the loans were originated in accordance with its underwriting guidelines (see amended complaint H 136; see also Countrywide mem in opposition to motion to dismiss at 14 n 15). MBIA has not alleged that every acquired loan possessed “significant but undisclosed credit risk”; yet, it requests “all documents relating to Mortgage Loans not originated by Countrywide” (Sheth affirmation, exhibit 2, at 9). This is overly broad.
“Ordinarily, the courts eschew pruning overbroad disclosure demands, preferring instead to strike the requests in total and leaving the propounding party to reformulate its requests” (Gaslow v KPMG LLP, NYLJ, Oct. 26, 2005, at 22, col 1, 2005 NY Misc LEXIS 3590, *4 [Sup Ct, NY County 2005], citing Haszinger v Praver, 12 AD3d 485 [2d Dept 2004]). Nevertheless, MBIA’s motion to compel is denied unless it revises its request by limiting it to the 180 days and 30 days delinquent categories, and categories otherwise already agreed to by *1071 Countrywide, in light of this court’s determination above. This limitation strikes a balance between compelling relevant information that is unduly burdensome to produce and information that is material and necessary.
Documents Relating to Communications with Any Regulator, Law Enforcement Agency, or State Attorney General in Connection with the Loans, Securitizations and Trusts
MBIA’s request No. 54 seeks the production of “[a]ll documents relating to any discussions or communications with any regulator, law enforcement agent, or state attorney general relating to (1) the Trusts, (2) the Securitizations or (3) the Mortgage Loans, including policies and procedures applicable to each and any proposed or enacted changes thereto” (Sheth affirmation, exhibit 2, at 18). MBIA argues that the communications between Countrywide and government regulators and law enforcement agents are relevant to whether Countrywide violated applicable regulations and laws, which in turn would be a breach of certain representations in the transaction documents.
Countrywide objected to the request and agreed only to produce documents relating “specifically to the trusts, securitizations and loans at issue in this case” (Countrywide mem in opposition at 14). Countrywide also claims that relevance is questionable since government authorities found no violations of law (Countrywide mem in opposition at 15).
Countrywide’s arguments against production are unavailing. MBIA alleges that Countrywide falsely represented in the insurance agreements that
“no practice, procedure or policy employed, or proposed to be employed, by the Servicer, Sponsor or Depositor in the conduct of its business violates any law, regulation, judgment, agreement, order or decree that, if enforced, could reasonably be expected to result in a Material Adverse Change to the Servicer, Sponsor or Depositor” (amended complaint If 168 [b] [emphasis added]; see Sheth affirmation, exhibit 37, at 9).
Based on the representation Countrywide made in the insurance agreements, there is no basis for its assertion that discovery must be limited to documents relating only to violations specifically dealing with the trusts, securitizations and loans at issue in this matter, nor is it of any moment if no actual violations were found. Rather, the issue is whether a violation *1072 could cause a material adverse change (as defined in the insurance agreements).
However, because Countrywide’s arguments against production are unavailing, it does not necessarily follow that this portion of MBIA’s motion to compel discovery must be granted. MBIA seeks “[a] 11 documents relating to any discussions or communications with any regulator, law enforcement agent, or state attorney general.” In its present form, MBIA’s request is overly broad, as it would also include communications with regulators or law enforcement agents concerning matters entirely unrelated to whether a violation, if enforced, could reasonably cause a material adverse change. Unless it can set forth some factual basis amounting to more than suspicion, as it has done in request No. 63, MBIA’s request attempts to launch an uncertain search that will not be permitted (Manley v New York City Hous. Auth., 190 AD2d 600, 601 [1st Dept 1993]). Accordingly, this portion of MBIA’s motion to compel is denied (Alazano v Fromchuck, 90 AD2d 483, 484 [2d Dept 1982] [“It is the duty of defendant’s attorney to assume the burden of serving a proper demand and it is not for the courts to attempt correction of a palpably bad one” (internal quotation marks omitted)]).
Documents Relating to BofA’s Settlement with Various State Attorneys General
MBIA’s request No. 63 seeks from Countrywide the production of documents relating to BofA’s October 6, 2008 settlement (the 2008 BofA settlement) with various state attorneys general, asserting that the request is relevant to whether Countrywide complied with representations in the insurance agreements.
On January 11, 2008, BofA announced that it would purchase Countrywide Financial (Bank of America Agrees to Purchase Countrywide Financial Corp., available at http:// newsroom.bankofamerica.com/index.php?s=43&item=7956 [last accessed June 30, 2009]). On October 6, 2008, BofA “agreed to settle claims brought by state attorneys general regarding certain risky loans originated by Countrywide Financial Corp.” (Simon, Wall Street Journal, Bank of America in Settlement Worth Over $8 Billion, available at http://online.wsj.com/article/ SB122325440046106461.html [last accessed June 30, 2009]).
MBIA’s request is relevant and Countrywide’s assertions to the contrary are unavailing. If communications between Countrywide and state attorneys general contemplated violations that, if enforced, could reasonably cause a material adverse *1073 change, then they would relate to MBIA’s claim of breach of the representations in the insurance agreements. Accordingly, this portion of MBIA’s motion is granted.
Documents Relating to Any Transfer of Assets or Assumption of Any Debt Securities between Countrywide and BofA
MBIA’s request Nos. 65 through 72 seek the production of documents relating to the transfer of Countrywide’s assets to BofA. MBIA maintains that documents relating to Countrywide’s transfer of liabilities and assets to BofA, any due diligence conducted by BofA regarding Countrywide’s loan-loss reserves and Countrywide’s accounting of loss reserves “may reveal the true value Countrywide assigned to the Securitizations and underlying Mortgage Loans, as well as credit risk assessed by Countrywide to these loans” (MBIA’s mem in support at 27).
MBIA’s assertion that this discovery is necessary is unpersuasive. MBLA aims to understand the “true value” of the securitizations and, in response, Countrywide is producing documents related to its valuation methods (request No. 18), accounting methods, policies and procedures (request Nos. 19-21) and analytics (request No. 31). Furthermore, MBIA’s rationale that discovery is needed to test Countrywide’s continuing ability to comply with its servicing obligations and “may reveal the true value Countrywide assigned to the Securitizations and underlying Mortgage Loans,” simply attempts to substitute speculation for reliable substance. In addition to the marginal benefit and likelihood of harassment, the requests are overly broad, unduly burdensome and therefore denied.
Documents Relating to Compensation of Angelo Mozilo and David Sambol
MBIA’s request No. 35 seeks the production of “[a] 11 documents relating to the compensation of Countrywide’s former executive Angelo Mozilo and former executive David Sambol, including documents relating to salary, bonus, stock options, retirement plans (including but not limited to, 401 (k) plans), severance packages, and other forms of compensation” (Sheth affirmation, exhibit 2, at 13). MBIA asserts that the request is relevant to issues of motive and intent, such as their theory that compensation incentives motivated Mozilo and Sambol to abandon conservative lending practices and violate Countrywide’s guidelines.
Countrywide opposes the production, asserting that the requested information is publicly available in Countrywide’s Securities and Exchange Commission (SEC) filings.
*1074 MBIA has not stated a basis as to how any of this information may impact a claim or defense in this action. Furthermore, Countrywide’s SEC filings provide sufficient information regarding the compensation Messrs. Mozilo and Sambol received. Accordingly, this portion of MBLA’s motion is denied.
Countrywide’s Motion for a Protective Order Cost-Shifting
Countrywide and MBIA dispute who must pay the costs associated with producing electronically-stored information. Countrywide argues that the cost is the responsibility of the requesting party, while MBIA argues the responsibility is that of the producing party.
Waltzer v Tradescape & Co., L.L.C. (31 AD3d 302 [1st Dept 2006]) and Lipco Elec. Corp. v ASG Consulting Corp. (4 Misc 3d 1019[A], 2004 NY Slip Op 50967[U], *8 [Sup Ct, Nassau County 2004]) are often cited as settling the rule, relied upon by Countrywide, that the party seeking discovery should bear the cost incurred in the production of discovery material (see e.g. T.A. Ahern Contrs. Corp. v Dormitory Auth. of State of N.Y., 24 Misc 3d 416 [Sup Ct, NY County 2009]; Matter of Maura, 17 Misc 3d 237, 247 [Sur Ct, Nassau County 2007]). However, the proposition cited stands on more precarious footing than Waltzer, Lipco Elec. Corp. and Countrywide suggest.
While confirming the principle that “under the CPLR, the party seeking discovery should bear the cost incurred in the production of discovery material,” the Appellate Division, First Department, in Waltzer declined to follow it and, instead, distinguished its facts on the basis that (1) it did not deal with “deleted electronically stored material”[3] and (2) the information sought was readily available (Waltzer, 31 AD3d at 304 [emphasis added]). Moreover, the Appellate Division added that the “cost of an examination by [the producing party] to see if [material] *1075 should not be produced due to privilege or on relevancy grounds should be borne by [the producing party]” (id.).
In Lipco Elec. Corp., citing Schroeder v Centro Pariso Tropical (233 AD2d 314 [2d Dept 1996]) and Rubin v Alamo Rent-A-Car (190 AD2d 661 [2d Dept 1993]), plaintiff sought electronic discovery and defendant objected to the production, arguing, among other things, that the cost would be substantial. The court stated that “cost shifting of electronic discovery is not an issue in New York since the courts have held that, under the CPLR, the party seeking discovery should incur the costs incurred in the production of discovery material” (2004 NY Slip Op 50967[U], *8).
Yet the three Second Department cases above each trace back to Rosado v Mercedes-Benz of N. Am. (103 AD2d 395 [2d Dept 1984]). Rosado supports a much narrower holding than the cited cases imply. There, the Court dealt with whether a party should be compelled to produce a translation of a German language document. Relying on First Circuit precedent, the Court applied the rule that “each party should shoulder the initial burden of financing his own suit, and based upon such a principle, it is the party seeking discovery of documents who should pay the cost of their translation” (Rosado, 103 AD2d at 398 [emphasis added] [interpreting CPLR 3114 as opposed to CPLR 3103]).
The Appellate Division, First Department, cast further doubt to the general statement of law in Waltzer and Lipco Elec. Corp. in Clarendon Natl. Ins. Co. v Atlantic Risk Mgt., Inc. There, the Appellate Division directed plaintiff to produce all of its claims files, adding that it saw “no reason to deviate from the general rule that, during the course of the action, each party should bear the expenses it incurs in responding to discovery requests” (Clarendon Natl. Ins. Co. v Atlantic Risk Mgt., Inc., 59 AD3d 284, 286 [1st Dept 2009], citing Waltzer, 31 AD3d at 304).
Countrywide urges that Clarendon Natl. Ins. Co. should be viewed as an anomaly. Far from being an anomaly, it is consistent with Waltzer in that application of the relevant rule in both resulted in cost allocation determinations only when the electronically-stored information to be produced was not readily available. While producing readily-available electronically-stored information (Clarendon — all of an insurance company’s claims files; Waltzer — data stored on two compact discs) will not warrant cost-allocation, the retrieval of archived or deleted electronic information has been held to require such additional *1076 effort as to warrant cost allocation (Samide, 5 AD3d at 466; Delta Fin. Corp., 13 Misc 3d at 614; Etzion, 7 Misc 3d at 944-945). Furthermore, under CPLR 3103 (a), the lodestar in granting a protective order granting allocation of discovery costs is the prevention of “unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts.” Hewing to this principle and the applicable case law, it is eminently reasonable to refrain from allocating discovery costs at this juncture.
Countrywide fails to show that it is settled law that the party requesting discovery must bear the cost of its production or that cost allocation is here warranted. Accordingly, Countrywide’s motion for a protective order allocating the costs of discovery is denied.
Countrywide’s Motion to Coordinate Discovery
Countrywide’s request to coordinate the discovery in this action with the discovery in Syncora v Countrywide (Sup Ct, NY County, index No. 650042/09) was denied on the record {see transcript May 14, 2009).
Countrywide’s Motion for a Protective Order
Countrywide’s motion for a protective order duplicates its opposition to MBIA’s motion to compel and therefore is denied as moot.
Countrywide’s Motion to Compel
Countrywide’s motion to compel seeks documents relating to other securitizations for which MBIA provided credit enhancements, including “private label” securitizations (Garvey affirmation, exhibit R, 1ÍH 25-27; Garvey affirmation, exhibit S, 1HI 82-85). Countrywide also seeks documents related to MBIA’s representation that it possessed “distinctive competency in credit risk management” (Garvey affirmation, exhibit S, 1Í 88), to MBIA’s decision-making process in providing financial guaranty insurance {id. H1Í114-115), to its termination of certain executives {id. 1Í1Í159-160), to MBIA’s municipal bond securitizations and, more generally, structured finance transactions {id. H1Í161-162, 168-178), to MBIA’s credit rating {id. 1ÍH 164-165) and to its knowledge concerning exposure to residential mortgage-backed securitizations {id. 1Í1Í180-181, 184-185, 187-190, 195-196).
Countrywide maintains that the requested information is relevant to two categories at issue in this case: (1) MBIA’s damages claims; and (2) whether MBIA’s reliance on Countrywide representations was justifiable.
*1077 Countrywide first contends that the discovery related to MBIA’s damages claims is needed to defend against MBIA’s allegations. Countrywide contends that the requested information may show that MBIA did not lose profits or opportunities by dealing with Countrywide because it would have otherwise dealt with other companies and lost money elsewhere. Countrywide’s requests seeking discovery related to securitizations that Countrywide did not originate is irrelevant. Quoting Countrywide’s own argument regarding the relevance of the securitizations not at issue in this matter: “Documents related to transactions not at issue in this matter are by definition not relevant as they do not tend to prove or disprove any fact at issue here” (Countrywide mem in opposition at 3). Discovery related to the non-Countrywide securitizations would not tend to prove or disprove Countrywide’s contention that MBIA would have suffered damage even if it did not deal with Countrywide.
Countrywide contends second that the documents it seeks will be used to show that MBIA is a sophisticated business entity and, therefore, held to a higher standard in order to demonstrate justifiable reliance. The documents sought are exceedingly broad and unnecessary to demonstrate MBIA’s sophistication — the degree of sophistication is irrelevant (see e.g. UST Private Equity Invs. Fund v Salomon Smith Barney, 288 AD2d 87, 88 [1st Dept 2001]; Stuart Silver Assoc. v Baco Dev. Corp., 245 AD2d 96, 99 [1st Dept 1997]).
Also, a sophisticated plaintiffs standard of showing justifiable reliance is higher than a typical plaintiff in that a sophisticated plaintiff must attempt to verify, using ordinary intelligence (see Stuart Silver Assoc., 245 AD2d at 99), the information provided by the defendant (see UST Private Equity Invs. Fund, 288 AD2d at 88 [“plaintiff failed to make use of the means of verification that were available to it, such as reviewing the files of the other parties”]). A significant portion of the documents MBIA would have used to verify Countrywide’s purported misrepresentations would have come from Countrywide. Furthermore, as a general proposition, to suggest that discovery of the true nature of the securitizations could have been achieved through reasonable investigation severely oversimplifies a product that has humbled many financial titans who considered themselves experts in understanding securitizations. In the end, Countrywide’s requests are overly broad because they fail to set forth a foundation justifying discovery of the expansive scope they request (see Manley, 190 AD2d at 601). Accordingly, Countrywide’s motion to compel discovery is denied.
*1078 Accordingly, it is ordered that MBIA’s motion to compel from Countrywide (1) documents relating to two securitizations beyond those upon which it brought the amended complaint is denied; (2) loan files for any loans that have ever been 30 days delinquent is granted; (3) data contained in electronic systems used by Countrywide in the origination, underwriting and servicing of loans is granted to the extent this court stated on the record on May 14, 2009; (4) documents relating to lists of appraisers from whom Countrywide refuses to accept appraisals or will only accept with a second appraisal is denied; (5) documents, including those related to due diligence and risk assessment, related to loans not originated by Countrywide is granted to the extent set forth above; (6) documents relating to communications with any regulator, law enforcement agency or state attorneys general in connection with the loans, securitizations and trusts is denied; (7) documents relating to BofA settlement with various state attorneys general is granted; (8) documents relating to any transfer of assets or assumption of any debt securities between Countrywide and BofA is denied; (9) documents sufficient to show all assets and liabilities as of the date of BofiA’s acquisition of Countrywide is denied; (10) documents relating to due diligence provided to BofA in connection with its acquisition of Countrywide is denied; and (11) documents relating to the compensation of Angelo Mozilo and David Sambol is denied; and it is further ordered that Countrywide’s motion seeking (1) to shift the cost of discovery expenses is denied; (2) to track the discovery schedule in this case with the discovery schedule in Syncora v Countrywide (Sup Ct, NY County, index No. 650042/09) is denied; (3) a protective order relating to MBIA’s motion to compel is denied as set forth above; and (4) an order compelling MBIA to respond to Countrywide’s discovery request Nos. 25-27, 82-85, 88, 114-115, 159-160, 161-162, 164-165, 168-178, 180-181, 184-185, 187-190 and 195-196 is denied.

. A mortgage-backed securitization is a financial product comprising of many mortgage loans combined into a large pool that can be divided into criteria-based chunks (e.g., the individual mortgage’s risk of default) and sold to investors (see http://www.investopedia.eom/terms/s/securitization.asp).

. In total, MBIA provided financial guaranty insurance for 17 Countrywide securitizations. In the original complaint, 10 of these 17 securitizations were included. In the amended complaint, MBIA added 5 of these 17 securitizations, leaving the relevance of two securitizations at issue in this motion (see amended complaint at 29; see also letter from Manisha M. Sheth to chambers dated Sept. 28, 2009 [confirming that the parties continued to dispute whether the two remaining securitizations were relevant]; letter from Christopher J. Garvey to chambers dated Sept. 29, 2009 [same]).

. Courts have shown a greater willingness to allocate the cost of discovery when the request involves the recovery of deleted or archived electronic data, especially when allocation is consented to by the producing party (see e.g. Samide v Roman Catholic Diocese of Brooklyn, 5 AD 3d 463, 466 [2d Dept 2004] [“In accordance with the consent of the plaintiffs attorney at oral argument of this appeal, all costs related to the recovery of the hard drive data shall be borne solely by the plaintiff’ (emphasis added)]; see also Delta Fin. Corp. v Morrison, 13 Misc 3d 604, 614 [Sup Ct, Nassau County 2006] [requesting party held responsible for 100% of the costs and expenses of searching through restored backup tapes]-, see generally Etzion v Etzion, 7 Misc 3d 940, 944-945 [Sup Ct, Nassau County 2005] [party requesting discovery directed to bear the cost of cloning or copying the hard drives of computers containing deleted business records]).