[939 NYS2d 395]

U.S. Bank National Association, as Indenture Trustee for the Benefit of the Insurers and Noteholders of GreenPoint Mortgage Funding Trust 2006-HE1, Home Equity Loan Asset-Backed Notes, Series 2006-HE1, Appellant, et al., Plaintiffs, v GreenPoint Mortgage Funding, Inc., Respondent.

First Department, February 28, 2012

## APPEARANCES OF COUNSEL

*Nixon Peabody LLP*, New York City (*Constance M. Boland* of counsel), for appellant.

*LeClairRyan, A Professional Corporation*, New York City (*Michael T. Conway* of counsel), and *BuckleySandler LLP*, New York City (*Matthew P. Previn* of counsel), for respondent.

## OPINION OF THE COURT

Acosta, J.

This case requires us to determine which party is to incur the cost of searching for, retrieving and producing both electronically stored information and physical documents that have been requested as part of the discovery process. Consistent with this Court's recent decision in *VOOM HD Holdings LLC v EchoStar Satellite L.L.C.* (93 AD3d 33 [2012]), which adopted the standards articulated by *Zubulake v UBS Warburg LLC* (220 FRD 212 [SD NY 2003]) in the context of preservation and spoliation, we are persuaded that *Zubulake* should be the rule in this Department, requiring the producing party to bear the cost of production to be modified by the IAS court in the exercise of its discretion on a proper motion by the producing party. Accordingly, the matter is remanded to the motion court for further proceedings.

Background

The complaint alleges that prior to August 2007, when its operations were allegedly shut down, defendant GreenPoint Mortgage Funding, Inc. was in the mortgage loan origination business, specializing in what were called "no-doc" and "low-doc" loans, i.e., mortgages for individuals with little to no documentation of income and assets. GreenPoint securitized these loans by pooling them into a trust and then offering for sale notes that were secured by and to be paid down by the cash flow received from the underlying loans.

In accordance with these practices, from 2005 to 2006, GreenPoint sold notes on approximately 30,000 residential mortgages it had securitized, valued at $1.83 billion, to nonparty GMAC Mortgage Corporation. Subsequently, GMAC assigned these notes to Lehman Brothers Bank; which, in turn, subsequently assigned them to its parent company, Lehman Brothers Holding; which, in turn, assigned the notes to an affiliated special purpose entity, the Structured Asset Securities Corporation; which, in turn, assigned them to plaintiff-appellant herein, U.S. Bank National Association, as the indenture trustee for the benefit of the insurers and noteholders of GreenPoint Mortgage Funding Trust 2006-HE1, Home Equity Loan Asset-Backed Notes, Series 2006-HE1. In addition, certain payments of the notes were guaranteed by two insurance companies, Syncora Guarantee, formerly known as XL Capital Assurance, Inc., and CIFG Assurance North America (CIFG).

According to U.S. Bank, less than two years after the transaction closed, approximately $530 million worth of the loans had been completely charged off as a total loss, or were severely delinquent. U.S. Bank now acts for the benefit of the noteholders and the insurers, which have been making payments to the noteholders.

The Litigation

U.S. Bank, by summons and complaint dated February 5, 2009, brought this action against GreenPoint for what it alleged were "gross violations" of the representations and warranties regarding the attributes of the loans and the policies and practices under which the loans were originated, underwritten and serviced. U.S. Bank further alleged that in its original agreement to sell the loans, GreenPoint promised it would cure any breaches of its representations and warranties that materially and adversely affected the value of the loans by repurchasing and replacing the noncomplying loans at agreed-to prices. U.S.

Bank also alleged that GreenPoint agreed that if the breaches were severe enough, GreenPoint would buy back all 30,000 mortgages.*

Discovery Motion

Concurrently with its original complaint in February 2009, U.S. Bank served its first request for the production of documents. In response, GreenPoint did not produce documents, but rather, on April 28, 2009, submitted a letter to the court pursuant to rules 11, 14 and 24 of the Rules of the Commercial Division of the Supreme Court (22 NYCRR 202.70 [g]), as well as CPLR 3214 (b) and 3103, seeking a ruling on whether discovery should be stayed pending the motion to dismiss, whether or not a protective order should issue governing the confidentiality and scope of disclosure, and whether production should be conditioned on U.S. Bank's confirmation it would pay the cost of production. GreenPoint advised the court that it had attempted to resolve these issues with U.S. Bank, but to no avail. U.S. Bank did not respond to GreenPoint's letter.

By notice of motion dated December 11, 2009, GreenPoint moved to stay discovery and for a protective order conditioning production of discovery on compliance with a proposed discovery protocol that provided, among other things, that each party would pay for its own discovery requests (i.e., U.S. Bank would pay the costs associated with its requests to GreenPoint and GreenPoint would pay the costs associated with its request to U.S. Bank) and that U.S. Bank would pay for GreenPoint's preproduction attorney review time for the purposes of privilege and confidentiality assertions.

In opposition, U.S. Bank argued that the merits of its allegations in this action, the relevance of its document request, and the likely asymmetry between GreenPoint's document production to it and U.S. Bank's likely document production to Green-Point militated in favor of denying the motion. U.S. Bank contended that because it was injured by a widespread pattern of GreenPoint's misrepresentations and warranties and its violations of its underwriting guidelines and practices concerning the 30,000 underlying loans, the anticipated document discovery from GreenPoint was expected to be vast, as were the resulting costs. U.S. Bank noted that the costs of production could run into the millions of dollars.

---

* The insurers, which were originally included as plaintiffs, were dismissed from the case for lack of standing.

Orders on Appeal

In an order entered April 13, 2010, the motion court denied GreenPoint's request for a protective order approving its discovery protocol. However, in so doing, it endorsed Green-Point's contention that "the well-settled rule in New York State" was that the "party seeking discovery bears the costs incurred in its production" and stated that it would not deviate from this rule in the instant action. The court, however, rejected GreenPoint's request that the party seeking discovery also bear the cost of compensating the attorneys engaged by the producing party to determine whether the demanded documents are responsive and not privileged.

Subsequently, U.S. Bank's counsel wrote to the court seeking clarification of the April 13 order, seeking an order that specifically directed the requesting party to pay the reasonable costs of the producing party (excluding attorneys' fees)—counsel wanted to make sure that for purposes of pursuing an appeal, it was deemed an aggrieved party. The court held a conference on September 28, 2010, wherein it reiterated that in this state, the party requesting discovery bears the costs incurred in its production and that the parties were not required to pay each other's attorneys' fees. The court noted that its ruling did not preclude either party from making any further application regarding the allocation of discovery costs at such later date if it becomes clear that such application is meritorious.

We disagree with the motion court's conclusion that the requesting party bears the cost of discovery that is responsive to its document requests. Rather, it is the producing party that is to bear the cost of the searching for, retrieving, and producing documents, including electronically stored information.

Analysis

The question of which party is responsible for the cost of searching for, retrieving and producing discovery has become unsettled because of the high cost of locating and producing electronically stored information (ESI). The CPLR is silent on the topic. Moreover, while our courts have attempted to provide working guidelines directing how parties and counsel should prepare for discovery, including ESI, these guidelines generally abstain from recommendations concerning the issue of cost allocation. Even the Rules of the Commercial Division for Supreme Court, Nassau County, previously recognized by this Court as the most sophisticated rules concerning discovery, including ESI, in the state (*see Tener v Cremer*, 89 AD3d 75

[2011]), are largely silent on the issue of cost allocation, merely noting that the law in New York on cost shifting is "still developing" and referring counsel to decisions of the Nassau County Commercial Division (Commercial Division, Nassau County, *Guidelines for Discovery of Electronically Stored Information ["ESI"]*, at V, Costs, available at http://www.courts.state.ny.us/courts/comdiv/PDFs/Nassau-E-Filing_Guidelines.pdf).

Indeed, the courts that have spoken on the issue of cost allocation have not done so with one voice. For example, at least one court has held that the requesting party should bear the entire cost of searching for, retrieving and producing discovery that included ESI (*see e.g. Lipco Elec. Corp. v ASG Consulting Corp.*, 4 Misc 3d 1019[A], 2004 NY Slip Op 50967[U] [2004]). This Court has previously acknowledged the requestor's obligation to pay for discovery and ESI costs (*see e.g. Response Personnel, Inc. v Aschenbrenner*, 77 AD3d 518 [2010]), but has allowed for an exception requiring the producer to pay where the cost of ESI production is less significant, such as where the ESI is readily available (*Waltzer v Tradescape & Co., L.L.C.*, 31 AD3d 302, 304 [2006]).

By contrast, there has been a movement among other courts, where the cost of discovery production is significant, to adopt the standards articulated by the United States District Court in *Zubulake v UBS Warburg LLC* (217 FRD 309, 317-318 [SD NY 2003]), and to place the cost of discovery, including searching for, retrieving and producing ESI, at least initially, on the producing party (*see e.g. MBIA Ins. Corp. v Countrywide Home Loans, Inc.*, 27 Misc 3d 1061, 1075-1076 [2010]; *see also Silverman v Shaoul*, 30 Misc 3d 491, 496 [2010]; *T.D. Bank, N.A. v J&T Hobby, LLC*, 2010 NY Slip Op 32481[U] [2010]; *cf. Clarendon Natl. Ins. Co. v Atlantic Risk Mgt., Inc.*, 59 AD3d 284, 286 [2009] [the general rule is that "during the course of the action, each party should bear the expenses it incurs in responding to discovery requests"]).

We are now persuaded that the courts adopting the *Zubulake* standard are moving discovery, in all contexts, in the proper direction. *Zubulake* presents the most practical framework for allocating all costs in discovery, including document production and searching for, retrieving and producing ESI. As noted, *Zubulake* requires, consistent with the Federal Rules of Civil Procedure, the producing party to bear the initial cost of searching for, retrieving and producing discovery, but permits the shifting of costs between the parties. When evaluating whether costs

should be shifted, the IAS courts, in the exercise of their broad discretion under article 31 of the CPLR (*see e.g. Allen v Crowell-Collier Publ. Co.*, 21 NY2d 403, 406 [1968]), may follow the seven factors set forth in *Zubulake*:

> "1. [t]he extent to which the request is specifically tailored to discover relevant information;
>
> "2. [t]he availability of such information from other sources;
>
> "3. [t]he total cost of production, compared to the amount in controversy;
>
> "4. [t]he total cost of production, compared to the resources available to each party;
>
> "5. [t]he relative ability of each party to control costs and its incentive to do so;
>
> "6. [t]he importance of the issues at stake in the litigation; and
>
> "7. [t]he relative benefits to the parties of obtaining the information" (*Zubulake*, 217 FRD at 322).

The motion courts should not follow these factors as a checklist, but rather, should use them as a guide to the exercise of their discretion in determining whether or not the request constitutes an undue burden or expense on the responding party (*id.* at 322-323).

Defendant argues against adopting the *Zubulake* standard, contending that requiring the requesting party to pay all costs associated with discovery is a sounder judicial practice and policy. Defendant contends that it "encourages parties to self-regulate the scope of their discovery demands and discourages parties from placing unnecessary and oppressive (even prohibitive) costs upon an opponent," quoting *T.A. Ahern Contrs. Corp. v Dormitory Auth. of State of N.Y.* (24 Misc 3d 416, 423 [2009]). Defendant asserts that the rule promotes judicial efficiency by removing the court from determining whether the information being sought is worth the cost of the search and would help the courts of this state avoid the "discovery wrangles" notoriously common in federal courts.

We find these arguments unavailing. First, requiring the producing party to bear its own cost of discovery, including the

searching, retrieving and producing of ESI, supports the "strong public policy favor[ing] resolving disputes on their merits" (*Zubulake*, 217 FRD at 318). The alternative of having the requestor pay "may ultimately deter the filing of potentially meritorious claims" particularly in circumstances where the requesting party is an individual (*Zubulake* at 318).

Second, we note, with some concern, that commentators and courts have called into question the underpinning of the requestor pays rule (*see e.g. MBIA Ins. Corp. v Countrywide Home Loans, Inc.*, 27 Misc 3d 1061 [2010], *supra, and* Connors, *Which Party Pays the Costs of Document Disclosure?*, 29 Pace L Rev 441, 450 [2009]). In *Countrywide*, for example, the motion court examined the holding of *Lipco Elec. Corp. v ASG Consulting Corp.* (4 Misc 3d 1019[A], 2004 NY Slip Op 50967[U] [2004], *supra*), the leading "requestor pays" case, and found it to be unsupported by the precedent it cited.

Finally, the adoption of the *Zubulake* standard is consistent with the long-standing rule in New York that the expenses incurred in connection with disclosure are to be paid by the respective producing parties and said expenses may be taxed as disbursements by the prevailing litigant (*see Wiseman v American Motors Sales Corp.*, 103 AD2d 230, 241 [1984]; *see also* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3108:5, at 379; C3103:5, at 301 [1970 ed]).

Applying these standards to the instant motion for a protective order, we find that the motion by defendant was premature. The more prudent course of action would have been for defendant to first make a motion to limit or strike the discovery requests initiated by plaintiff that it found to be overbroad, irrelevant, or unduly burdensome. If, following the resolution of that motion, defendant still believed the costs associated with searching for, retrieving, and producing ESI to be prohibitive, defendant could then file a motion for the costs to be shifted to plaintiff.

There is no occasion, however, for us to opine on the propriety of shifting costs in this matter. There is simply no evidence in the record supporting the fee structure proposed by defendant. There is no indication, for example, as to what experts, if any, will be used to restore deleted or missing documents, or even if there are deleted or missing documents that need to be restored. Indeed, it is unclear how defendant arrived at the retrieval costs it cited. While it may be, as the motion court noted, that defendant demonstrates a reason for either limiting or narrow-

ing plaintiff's discovery requests and shifting some or all of the cost to plaintiff, it has simply not done so on the record to date.

Accordingly, the order of the Supreme Court, New York County (Bernard J. Fried, J.), entered October 13, 2010, which, insofar as appealed from, required plaintiff to bear the cost incurred in the production of discovery, should be reversed, on the law, without costs, and defendant is directed to bear its own discovery costs, subject to the reallocation on a proper showing, and the matter is remanded to the Supreme Court for further proceedings consistent with this opinion. The appeal from the order of the same court and Justice, entered April 13, 2010, should be dismissed, without costs, as superseded by the order entered October 13, 2010.

SAXE, J.P., SWEENY, ACOSTA, DEGRASSE and ABDUS-SALAAM, JJ., concur.

Order, Supreme Court, New York County (Bernard J. Fried, J.), entered October 13, 2010, reversed, on the law, without costs, to direct defendant to bear its own discovery costs, subject to reallocation on a proper showing, and the matter is remanded to the Supreme Court for further proceedings consistent with this opinion. Appeal from order, same court and Justice, entered April 13, 2010, dismissed, without costs, as superseded by the order entered October 13, 2010.